PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* FRANCISCO CALVENTY, Defendant and Appellant.

No. 2338.—Argued December 23, 1924.—Decided June 24, 1925.

1. ASSAULT AND BATTERY — EVIDENCE — RES GESTAE. — Statements made by a woman a few minutes after having been assaulted and as soon as she was able to speak coherently in response to inquiries addressed to her before she recovered sufficient self-control to reply are admissible in evidence as *res gestae.*

2. ID.—ID.—The testimony of a physician is admissible to show that the defendant is more than twenty-one years of age.

3. ID.—SENTENCE.—A district court is not bound by the sentence imposed on a defendant in the municipal court.

District Court of Aguadilla, Tomás Bryan, J.   Judgment of conviction of aggravated assault and· battery.  *Modified and affirmed.*
*García Méndez & García Méndez* for the appellant.  *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was convicted of aggravated assault and battery, and says that—

1.—The court erred in admitting the hearsay testimony of witness Epifania Moya on the mistaken ground that the same formed part of the res gestae.

2.—The court erred in admitting expert evidence to prove the defendant's age.

3.—The court erred in refusing to strike the testimony of Dr. Buenaventura Jiménez Serra.

4.—The court erred in finding the defendant guilty, the evidence being insufficient to support the judgment; and

5.—The court erred in the exercise of its discretion in sentencing the defendant to two years' imprisonment and to pay the costs.

[1] The information charged that the offense was com-

mitted at 3 o'clock in the afternoon. There was no conflict in the testimony. Both the prosecuting witness and Epifania Moya say that the assault was committed between 12 and 1 o'clock, and after lunch. The trial judge attributed the discrepancy between this testimony and the hour mentioned in the information to an effort on the part of these witnesses to reconcile the facts as they occurred with the town lunch hour. But, be this as it may, all the circumstances, as related by both witnesses, point to a disclosure made immediately after the event. The trial judge was at liberty to believe, and obviously did believe, that the conversation objected to occurred within a few minutes after the assault, in fact as soon as the victim thereof was able to speak coherently in response to anxious inquiries repeatedly addressed to her during the short interval that elapsed before she recovered sufficient self-control to make an intelligible statement with reference to what had occurred.

In the circumstances, the question as to whether the crime was in fact committed between 12 and 1, as stated by the witnesses at the trial, or at 3 o'clock in the afternoon, as alleged in the information, is not a matter of vital importance, and received far more careful consideration in the court below than it deserved.

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs. is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. The ordinary situation pre-

senting these conditions is an affray or a railroad accident. But the principle itself is a broad one." 3 Wigmore, sec. 1747, p. 738.

"The utterance must have been *before there has been time to contrive and misrepresent, i. e.,* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.

"It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. The fallacy, formerly entertained by a few courts, that the utterance must be strictly contemporaneous (*post,* sec. 1756), owes its origin to a mistaken application of the Verbal Act doctrine. . . . .

"Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances. . . . .

"Since the application of the principle thus depends entirely on the circumstances of each case, it is therefore impossible to regard rulings upon this limitation as having in strictness the force of precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles. There is a lamentable waste of time by Supreme Courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the determination of the trial court. Until such a beneficent result is reached, the lucubrations of Supreme Courts over the details of each case will continue to multiply the tedious reading of the profession." Id.—section 1750, pp 744–751.

We need not speculate as to whether or not it would be entirely safe, or premature or perilous, at this time and in this jurisdiction, to attempt an Elysian flight through the altitudinal zone of the penultimate statement last above quoted. For the present, it will suffice to say that unless and until an appellant can show an open disregard or plain departure from the principle involved, we shall not be dis-

posed to interfere with the exercise of a sound discretion by the trial judge.

[2] Appellant seems to have overlooked the case of *People* v. *Ruiz*, 31 P.R.R. 297, which, in the absence of anything more in the way of argument than is contained in the brief for appellant herein, disposes of the second and third assignments.

The *fiscal* of this court is inclined to concede that the evidence shows an aggravated assault rather than actual battery. Inasmuch as the matter goes only to the name and technical classification of the offense, without affecting the penalty, we may likewise concede, without holding, that the judgment should be modified to the extent indicated.

Aside from this, and in the absence of any citation of authority, the fourth assignment does not demand serious consideration, although defendant might have been charged with the commission of a more serious offense arising out of the same facts.

[3] In support of the fifth assignment appellant says that in the municipal court he received a sentence of only six months in jail. We find nothing in the record to show this; but, in any event, the district judge, after a trial *de novo,* was not bound by the penalty imposed in the municipal court; and, all things considered, we are unable to say that two years in jail is too much.

The judgment appealed from will be modified by elimination of the element of battery, and, when so modified, affirmed.